UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BLUESTONE ENVIRONMENTAL, | ) | |
| GROUP, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Civil No. 3:21-cv-30056-MGM |
| | ) | |
| | ) | |
| IZABELA ZAPISEK, SCOTT | ) | |
| CAMPBELL, and TACONIC | ) | |
| RIDGE ENVIRONMENTAL, INC., | ) | |
| Defendants. | ) | |

<u>MEMORANDUM AND ORDER ON PLAINTIFF BLUESTONE ENVIRONMENTAL
GROUP INC.'S MOTION TO COMPEL THE DEPOSITION OF DEAN TAGLIAFERRO</u>
(Dkt No. 45)

ROBERTSON, U.S.M.J.

Bluestone Environmental Group, Inc., ("Bluestone" or "Plaintiff") is suing former

employees Isabela Zapisek ("Zapisek") and Scott Campbell ("Campbell"), along with their

company, Taconic Ridge Environmental, Inc., ("Taconic" and, collectively with Zapisek and

Campbell, "Defendants") for tortious interference with a contractual relationship, tortious

interference with a prospective business relationship, civil conspiracy, and unfair or deceptive

acts and practices in violation of Mass. Gen. Laws ch. 93A (Dkt. No. 1).  Plaintiff alleges that

Zapisek and Campbell formed Taconic while they were still working for Plaintiff and conspired

to prevent Plaintiff from being awarded a $15 million contract from the Environmental

Protection Agency ("EPA") overseeing General Electric's clean-up operation on the Housatonic

River.  Plaintiff currently seeks to depose Dean Tagliaferro ("Tagliaferro"), the EPA's long-time

project coordinator on the project (Dkt. No. 45).  The EPA opposes the motion (Dkt. No. 52).[1]
For the reasons stated herein, the court DENIES Plaintiff's motion.

## I.       PLAINTIFF'S ALLEGATIONS

Plaintiff is a certified economically disadvantaged woman-owned small business
specializing in environmental consulting, environmental risk assessments, and engineering
services (Dkt. No. 52-4 at ¶ 11).  In 2019, Plaintiff acquired Avatar Environmental, LLC,
("Avatar") and, along with it, a 2014 contract to perform work on an EPA investigation and
clean-up project on the Housatonic River (Dkt. No. 52-4 at ¶¶ 16, 18, 24).  The contract was
administered through the U.S. Army Corps of Engineers, New England District ("CENAE") and
had been for over twenty years (Dkt. No. 52-4 at ¶¶ 24, 26).  At the time of the acquisition,
Zapisek and Campbell were Avatar employees, and they became Bluestone employees (Dkt. No.
52-4 ¶ 17).  Tagliaferro was the EPA's long-time Project Coordinator at the Housatonic River
site, and, on several occasions, he insisted to Bluestone that Zapisek and Campbell remain on the
project (Dkt. No. 52-4 at ¶¶ 29, 32).

On October 3, 2019, CENAE issued a notice of solicitation for the continuation of the
work that Bluestone had been performing under the 2014 contract, which would be expiring
(Dkt. No. 52-4 at ¶ 45).  The contract was to cover the next five years and had a value of up to
$15 million (Dkt. No. 52-4 at ¶ 50).  Approximately one month later, Bluestone, in conjunction
with its existing subcontractors, submitted a proposal in response to the solicitation (Dkt. No. 52-
4 at ¶¶ 48, 53).  Tagliaferro was to participate in CENAE's selection board for the solicitation as
a non-voting member (Dkt. No. 52-4 at ¶ 54).

---

[1] Defendants take no position on the motion.

Zapisek and Campbell formed their own environmental services company, Taconic Ridge, on February 14, 2020, and resigned their employment with Bluestone the following month (Dkt. No. 52-4 at ¶¶ 57, 67). At the time of their resignations, Zapisek and Campbell insisted that their information be removed from Bluestone's proposal in response to the 2019 solicitation (Dkt. No. 52-4 at ¶¶ 70, 72). Just one day after Zapisek and Campbell resigned and before Plaintiff had notified CENAE of their resignations, CENAE contacted Plaintiff asking what Bluestone was going to do to replace Zapisek and Campbell on the work for the existing 2014 contract and requesting a personnel modification to its proposal for the 2019 solicitation (Dkt. No. 52-4 at ¶ 74). CENAE approved Bluestone's alternative personnel for the remainder of the 2014 contract, and Bluestar successfully performed under the 2014 contract through September 2020 (Dkt. No. 52-4 at ¶¶ 84-85).

On April 15, 2020, after CENAE had made several requests to extend the solicitation period and sent Bluestone a pre-award questionnaire and certification of current costs or pricing data, the EPA rescinded CENAE's authority to administer the project (Dkt. No. 52-4 at ¶¶ 56, 58, 61, 81, 87). The EPA ultimately awarded the contract for the work that was the subject of the solicitation to another entity through a closed bidding process, and Taconic was awarded a subcontract (Dkt. No. 52-4 at ¶¶ 90-91). According to Bluestone, it is completely unprecedented for a contractor to receive a pre-award questionnaire and a request for a certificate of current costs or pricing data and not ultimately be selected as the awardee (Dkt. No. 52-4 at ¶¶ 59, 63). Bluestone alleges on information and belief that Zapisek and Campbell intended that their resignations would cause Bluestone to lose the award of the new contract and that they had formed a plan and agreed to prevent the project work from being awarded to Bluestone and to acquire a contract to perform the work, or parts of it, themselves (Dkt. No. 52-4 at ¶¶ 79-80).

3

## II.     ADMINISTRATIVE RECORD

On April 22, 2020, Bluestone sent a letter to the EPA Office of the Inspector General

("OIG") raising concerns of misconduct in connection with the cancellation of the CENAE

solicitation (Dkt. No. 52-12 at 10-16).  There is no record of any response by OIG.

On June 10, 2020, Bluestone filed an agency-level protest (Dkt. Nos. 52-10; 52-12 at 6-

9).  The EPA dismissed Bluestone's protest on July 8, 2020, because: (1) Bluestone was not an

"interested party;" (2) Bluestone's protest appeared to be centered around the cancellation of

CENAE's solicitation and, therefore, Bluestone should have filed its agency-level protest with

CENAE, not the EPA; and (3) the EPA lacked jurisdiction to consider Bluestone's protest

because the value of the task order was less than $10 million (Dkt. No. 52-9).

The following day, Bluestone sent a letter to U.S. Senator Patrick Toomey raising its

concerns about the process, prompting Toomey to send a letter requesting a response from the

EPA as to Bluestone's concerns (Dkt. No. 52-12).  Dennis Deziel ("Deziel"), EPA Regional

Administrator, responded on July 10, 2020, explaining that CENAE cancelled its solicitation in

October 2019, at which point the EPA initiated its Remedial Acquisition Framework ("RAF")

process for certain work at the site and that only pre-selected contractors were eligible, of which

Bluestone was not one (Dkt. No. 52-13 at 2).  Deziel also explained that RAF offered a number

of advantages including maximizing competition to realize cost efficiency and strengthening the

EPA's contract management processes (Dkt. No. 52-13 at 2).  He identified RAF as "the EPA's

choice for acquiring remedial acquisition services" (Dkt. No. 52-13 at 2).

On July 10, 2020, Bluestone filed a protest with the United States Government

Accountability Office ("GAO") challenging the EPA's dismissal of its agency-level protest (Dkt.

No. 52-11).  Bluestone had also requested review of the agency-level decision within the EPA,

but that request was dismissed as moot due to the filing of the GAO protest (Dkt. No. 52-10). The GAO dismissed Bluestone's protest on September 23, 2020, finding that it lacked jurisdiction because the task order at issue was below $10 million, and Bluestone did not allege that the order increased the scope, period, or maximum value of the underlying contract (Dkt. 52-11).

Bluestone filed the instant lawsuit on May 7, 2021 (Dkt. No. 52-4 at 17).  On August 10, 2021, Bluestone made a Freedom of Information Act ("FOIA") request to the EPA (Dkt. No. 52-8).  In January 2022, Bluestone served subpoenas for testimony and documents on Tagliaferro (Dkt. Nos. 52-6 and 52-7).  EPA notified Bluestone of its intention to consider the subpoena for documents as an addendum to the existing FOIA request on February 16, 2022 (Dkt. No. 52-5). On March 3, 2022, Bluestone withdrew its subpoena for testimony in favor of voluntarily requesting Tagliaferro's testimony in accordance with 40 C.F.R. § 2.403 (Dkt. No. 52-14).

On May 25, 2022, Bluestone sent Carl Dierker ("Dierker"), Regional Counsel for EPA Region 1, a request for Tagliaferro's testimony (Dkt. No. 52-4).  Bluestone asserted that "[t]he EPA is required to allow Mr. Tagliaferro to testify because Mr. Tagliaferro may have used his official position in the EPA to benefit Ms. Zapisek and Mr. Campbell, individuals with whom he has a close personal relationship" (Dkt. No. 52-4 at 1).  In the request, Bluestone largely repeated the allegations in its complaint, a copy of which it attached to its request, and asserted that "[b]ased on the events surrounding Mr. Campbell and Ms. Zapisek's resignations, it appears that someone may have provided Mr. Campbell and Ms. Zapisek confidential information regarding the Procurement.  All relevant evidence suggests Mr. Tagliaferro may have been the person disclosing the information" (Dkt. No. 52-4 at 2).  Bluestone indicated that it was seeking testimony:

> regarding his relationship with Mr. Campbell and Ms. Zapisek, his
> communications with Mr. Campbell and Ms. Zapisek concerning
> the Project between 2019 and the present, his communications with
> Ms. Zapisek and Mr. Campbell concerning Taconic Ridge, his
> communications with Ms. Zapisek and Mr. Campbell concerning
> their resignations, his communications with Ms. Zapisek and Mr.
> Campbell concerning the Solicitation, his participation in
> CENAE's selection board, and the basis for the EPA rescinding
> CENAE's authority to administer the Project

(Dkt. No. 54-2 at 3).  Bluestone argued that allowing Mr. Tagliaferro to testify was clearly in the

interests of the EPA because it would uncover potential wrongdoing by an EPA employee (Dkt.

No. 52-4 at 4).  Additionally, Bluestone asserted that allowing Tagliaferro to testify would not

make it appear that the EPA was taking sides in the litigation, that any public funds required to

be expended to allow Tagliaferro to testify would not be viewed as being used for a private

purpose, and that Tagliaferro's time would not be being used for a private purpose (Dkt. No. 52-

4 at 4-6).

EPA responded by letter dated July 7, 2022, concluding that allowing Tagliaferro's

testimony "would not clearly be in the interests of EPA," and refusing to allow him to testify

(Dkt. No. 52-2 at 2).  Dierker enumerated three bases underlying the decision.  First, Dierker

pointed to the significant resources the EPA had already dedicated to responding to Bluestone's

allegations and requests for information.  Specifically, the EPA provided 161 records in response

to Bluestone's FOIA request, which required seven EPA employees to spend 145 combined

hours to search and review over 3,000 records; the EPA incurred roughly $4,000 in costs through

this process, only $2,512 of which were billable to Bluestone; the EPA reviewed and dismissed

Bluestone's agency-level protest and appeal; and the EPA responded to the letter from the Office

of Senator Toomey (Dkt. No. 52-2 at 2).  Dierker noted that Bluestone's allegations of

wrongdoing were entirely speculative as Bluestone had been unable to find support for its

allegations through any of these avenues and that such speculation was at odds with the "presumption of regularity [that] attaches to the actions of Government agencies." *U.S. Postal Serv. v. Gregory*, 534 U.S. 1, 10 (2001). Second, Dierker rejected the contention that allowing Tagliaferro's testimony would serve a truth-finding purpose in potentially exposing wrongful conduct where EPA has existing procedures for uncovering misconduct and need not rely on a deposition conducted by outside legal counsel representing a private litigant (Dkt. No. 52-2 at 2-3). Finally, Dierker explained that Tagliaferro did not have authority to make final contracting decisions for the site and did not do so, and that he, Dierker, had spoken with Tagliaferro's manager, Bryan Olsen ("Olsen"), who was personally aware of the actions taking place regarding contracting at the site and had concluded that no misconduct had occurred regarding the matter (Dkt. No. 52-2 at 3).

In an effort to obviate Plaintiff's professed need for Tagliaferro's deposition, the EPA also produced a memo from Olsen (Dkt. No. 52-3; Dkt. No. 52-15 at 3). Olsen, who is the Director of the Superfund and Emergency Management Division ("SEMD") for EPA, Region 1, explained that "[i]n the Spring of 2020, EPA determined that the most efficient and cost-effective path forward for contracting at the Site would be to utilize EPA's national 'Design and Engineering' ('DES') contracting framework program, rather than the CENAE's contracting services" (Dkt. No. 52-3 at ¶ 8). Olsen identified the reasons underlying this decision as including: (1) a national push to utilize EPA's Remedial Acquisition Framework ("RAF") suite of contracts, which includes the DES framework; (2) cost savings from utilizing EPA personnel to perform contract administration under DES, rather than relying on CENAE; (3) the increased control over contracting and contract administration provided by the DES program; and (4) resolution of contracting issues related to leasing of office space for the site (Dkt. No. 52-3 at ¶

8).  Olsen noted that he had conversations with Tagliaferro and others regarding these issues

contemporaneously with the decision and that Tagliaferro was a staff person with no authority

over any decision to transition to the DES contracting framework, to enter into a task order under

the DES program, or to issue a contract under any other contracting program (Dkt. No. 52-3 at ¶¶

8, 9).  Olsen explained that "my management team and I made the final decision to transition to

the DES program because it was in the best interest of the EPA and the government" (Dkt. No.

52-3 at ¶ 9).  Finally, Olsen concluded that he was satisfied that no misconduct occurred in the

cancellation of the CENAE solicitation and issuance of the DES task order based on his

discussion of events both as they occurred and in response to Bluestone's subpoenas (Dkt. No.

52-3 at ¶ 9).

## III.    STANDARD OF REVIEW

A disappointed litigant may seek judicial review of a federal agency's refusal to provide

information only under the Administrative Procedure Act ("APA").  *Cabral v. U.S. Dep't of*

*Justice*, 587 F.3d 13, 22–23 (1st Cir. 2009).  "Under the APA, a reviewing court may overturn an

agency's decision to deny disclosure only if the decision is found to be 'arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with the law.'"  *Id*. at 23 (quoting 5 U.S.C.

§ 706(2)(A)).  The burden is on the party challenging the agency decision to show that the

arbitrary and capricious standard has been met.  *Bobreski v. U.S. E.P.A.*, 284 F. Supp. 2d 67, 80

(D.D.C. 2003) (citing *Kauffman v. Dep't of Labor*, No. Civ. A. 96-5929, 1997 WL 825244, at *2

(E.D. Pa. Dec. 19, 1997); *Wade v. Singer Co.*, 130 F.R.D. 89, 92 (N.D. Ill. 1990)).

Under the APA's arbitrary and capricious standard, "agency action is presumptively

valid," and the standard "precludes a reviewing court from substituting its own judgment for that

of the agency."  *Rhode Island Hosp. v. Leavitt*, 548 F.3d 29, 33–34 (1st Cir. 2008).  "'Judicial

8

review is … "severely limited," and courts are only free to determine whether the agency followed its own guidelines or committed a clear error of judgment.'" *Gulluni v. U.S. Att'y for the Dist. of Mass.*, Civil Action No. 21-30058-NMG, 2022 WL 4084224, at *2-3 (D. Mass. Sept. 6, 2022) (quoting *Commonwealth of Puerto Rico v. United States*, Civil Nos. 06-1305 (JAF), 06-1306 (JAF), 2006 WL 2795576, at *14 (D.P.R. Sept. 26, 2006), *aff'd*, 490 F.3d 50 (1st Cir. 2007)).  "[T]he reviewing court is limited to the administrative record as it existed at the time of the agency's decision." *Westchester Gen. Hosp., Inc. v. Dep't of Health & Human Servs., Ctr. for Medicare & Medicaid Servs.*, 770 F. Supp. 2d 1286, 1289 (S.D. Fla. 2011), *aff'd* 443 F. App'x 407 (11th Cir. 2011) (citing *C.I.R. v. Neal*, 557 F.3d 1262, 1279 (11th Cir. 2009)).  *See also* 5 U.S.C. § 706.  "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U.S.C. § 706, to the agency decision based on the record the agency presents to the reviewing court." *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 743-744 (1973).

## IV.    APPLICABLE REGULATIONS

Under the Housekeeping Act, 5 U.S.C. § 301, federal agencies may promulgate regulations establishing conditions for the disclosure of information.  *Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 61 (1st Cir. 2007).  *See also* 5 U.S.C. § 301 ("[T]he head of an Executive department … may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property.").  The Supreme Court affirmed the authority of federal agencies to promulgate such regulations in *United States ex rel. Touhy v. Ragen*, 340 U.S. 462 (1951).  Consequently, regulations that fall within the scope of § 301 are commonly referred to as *Touhy* regulations.  The EPA's *Touhy* regulations appear at 40 C.F.R. §§ 2.401-2.406.

The purpose of EPA's *Touhy* regulations, which apply in federal civil proceedings to which neither the United States nor any agency is a party, is to "ensure that employees' official time is used only for official purposes, to maintain the impartiality of EPA among private litigants, to ensure that public funds are not used for private purposes and to establish procedures for approving testimony or production of documents when clearly in the interests of EPA." 40 C.F.R. §2.401(c). The regulations set forth procedures to be followed "when an EPA employee is requested or subpoenaed to provide testimony concerning information acquired in the course of performing official duties or because of the employee's official status." 40 C.F.R. § 2.401. To obtain voluntary testimony, a party must submit a written request describing the nature of the testimony and the reasons why the testimony would be in the interests of EPA. 40 C.F.R. § 2.403. After receiving a request for testimony or a subpoena, the EPA general counsel or his designee determines whether compliance with the request or subpoena would "clearly be in the interests of EPA" and responds accordingly. 40 C.F.R. §§ 2.403, 2.404.

## V.    DISCUSSION

The sole question before the court is whether Plaintiff has shown that the EPA's refusal to authorize Tagliaferro to be deposed was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). Plaintiff and the EPA agree that this is the applicable standard. The court determines that Plaintiff has not met it.

After careful review of the administrative record, the court finds that the EPA considered Bluestone's request and, applying the correct legal standard, reached a conclusion that is not arbitrary and capricious. The EPA appropriately considered the relevant factors as set forth in 40 C.F.R. § 2.401(c). Dierker's letter denying Bluestone's request expressly articulates the EPA's concern that allowing Tagliaferro to testify in this private litigation would not clearly be in the

10

interests of EPA and could be perceived as a failure by the agency to maintain impartiality among private litigants (Dkt. No. 52-2).  Dierker enumerated the reasons why allowing Tagliaferro to testify would not clearly be in the interests of EPA, including the significant resources EPA has already dedicated to responding to Bluestone's allegations and requests for information, the fact that EPA has existing procedures for uncovering misconduct, and that Tagliaferro's supervisor has concluded that no misconduct occurred regarding the matter.   Based on this record, this court cannot conclude that the EPA failed to follow its own guidelines or committed a clear error of judgment.  *Gulluni*, 2022 WL 4084224, at *2-3.

Plaintiff offers several arguments in support of a finding that EPA's refusal is arbitrary and capricious.  First, Plaintiff relies on *Lewis v. Walker*, No. 3:06-CV-16 (CDL), 2009 WL 2611522 (M.D. Ga. Aug. 21, 2009), to suggest that courts have held that it is an abuse of discretion for the EPA to deny *Touhy* requests that may help it uncover improper conduct by EPA employees.  Plaintiff misstates the holding of *Lewis*.  In *Lewis*, the relators brought a False Claims Act action against researchers who allegedly made false statements on a grant application to the EPA.  *Id*. at *1.  The EPA refused to allow the relators to take the deposition of an EPA employee based on its conclusion that making the employee available for the deposition was not clearly in its interests because her potential testimony was not relevant to the relators' claims.  *Id*. at *4.  The *Lewis* court found that this conclusion ran counter to the evidence before the agency insofar as the employee, who had been involved in the grant application and related investigations, was likely to possess evidence relevant to the relators' claims.  *Id*.  Under the circumstances, "the EPA's refusal to allow her to be deposed based solely on an unsubstantiated and subjective belief that she possesses no relevant information was arbitrary and capricious." *Id*.

Here, the EPA did not determine that allowing Tagliaferro's deposition was not in its interests because Tagliaferro does not possess relevant information.  In this regard, the EPA's response here does not "mirror" the EPA's response in *Lewis*, as Plaintiff argues.  The EPA nowhere suggests that Tagliaferro does not have relevant information.  The same could almost certainly be said about to any federal agency employee who is the target of a subpoena from a private litigant.  The mere fact that Tagliaferro possesses relevant information does not entitle Plaintiff to depose him.

Moreover, the *Lewis* court's only mention of the idea that a deposition would be in the interests of the EPA because it could uncover improper misconduct by EPA employees was in its recounting of the relators' arguments.  Contrary to Plaintiff's representations, the court did not adopt this rationale as a basis for its decision.  Nor is this court independently persuaded that this is a sufficient basis for finding that the EPA's decision in this case is arbitrary and capricious.  As the EPA has persuasively pointed out, it has procedures – indeed, it has an independent, statutorily-created office, OIG – for uncovering misconduct by its employees.  It was not arbitrary or capricious for the EPA to conclude that it would not benefit the EPA to rely on a deposition in private litigation to which it is not a party for this purpose.

Additionally, the court notes that Plaintiff has not presented any evidence that Tagliaferro engaged in misconduct that could be uncovered during his deposition.  Instead, there is simply Plaintiff's suspicion that "someone, likely Tagliaferro, informed [Zapisek and Campbell] that the EPA would be rescinding CENAE's authority to administer the Project in the near future …" (Dkt. No. 46 at 8).  Plaintiff's suspicions stand in direct conflict with the conclusion of Tagliaferro's supervisor, Olsen, that no misconduct occurred.  Olsen's conclusion was based on his own personal involvement in the cancellation of the CENAE solicitation and issuance of the

DES task order, as well as his review of those events in response to the subpoenas issued by Plaintiff.

Plaintiff's second argument is that allowing Tagliaferro to testify will not interfere with the EPA's mission.  Plaintiff faults the EPA for relying on the already significant resources it has expended in responding to Bluestone's allegations and requests for information regarding those allegations.  Plaintiff argues that these considerations are beyond the scope of what is appropriate to consider.  Rather, according to Plaintiff, the EPA should only consider the impact of the testimony and any preparation, not the work that the agency has put into responding to other requests.  Plaintiff does not cite any authority establishing that it is improper for the EPA to take into account resources it has already expended in connection with determining whether the provision of additional resources is clearly in its interests, and there is nothing inherently improper about an agency considering the cumulative effect of a particular request when determining what is in its interests.  Furthermore, while "any given request may seem small in isolation, … and agency has an interest in protecting itself against the *cumulative* disruption to its duties that would come with routinely granting requests for [information]."  *Westchester Gen. Hosp.*, 770 F. Supp. 2d at 1298 (citing *Moore v. Armour Pharm. Co.*, 927 F.2d 1194, 1198 (11th Cir. 1991)).

Plaintiff also argues that the EPA's conclusion that allowing Bluestone to depose Tagliaferro would set a precedent that would allow contractors who are unsuccessful in securing EPA contracts to interfere with the agency's mission is unsupported by the evidence.  According to Plaintiff, the "extremely specific" facts of this case set it apart from run-of-the-mill cases involving unsuccessful bidders for EPA contracts.  The court disagrees.  There are no "extremely specific" facts; there is simply Plaintiff's suspicion that someone in the EPA, likely Taliaferro,

engaged in misconduct.  If this were sufficient, all an unsuccessful bidder would have to do in order to depose involved EPA employees is allege misconduct.  Thus, the EPA's "concern about the effects of proliferation of testimony by its employees is within the penumbra of reasonable judgmental decisions it may make." *Davis Enters. v. U.S. E.P.A.*, 877 F.2d 1181, 1187 (3d Cir. 1989).

Thirdly, Plaintiff argues that the EPA's decision that allowing Tagliaferro to testify would likely be seen as favoring one or the other party in the litigation is unsupported by the facts.  Plaintiff accuses the EPA of favoring Defendants by delaying its responses to Plaintiff's requests, subpoenas, and inquiries (Dkt. No. 46 at 16).  The record does not bear out this accusation.  In fact, the record shows that the EPA has made efforts to provide Plaintiff with the information it seeks by producing the Olsen memorandum, which lays out the reasons why the EPA cancelled the CENAE solicitation in favor of utilizing the DES contracting framework program.  Moreover, while it may be "arguable that permitting [Tagliaferro] to give a deposition based on facts within his knowledge would not create the appearance of taking sides, the EPA's conclusion to the contrary is not capricious." *Davis Enters.*, 877 F.2d at 1186–87.

Finally, Plaintiff argues that Tagliaferro should be required to testify about his personal relationship with Zapisek and Campbell because the EPA's *Touhy* regulations only apply to "testimony or information acquired in the course of performing official duties or because of the employee's official status."  40 C.F.R. § 2.401.  This final argument by Plaintiff is unavailing. There is no question on this record that Tagliaferro's relationships with Zapisek and Campbell were "because of [his] official status," namely his position as project coordinator on the Housatonic River project, and that the information Plaintiff seeks was acquired while Tagliaferro was performing his official duties.  Nothing about the fact that Tagliaferro may have had

14

incidental communications with Zapisek and Campbell about topics of a personal nature within the context of this official relationship changes this conclusion.

## VI.     CONCLUSION

For the above-stated reasons, Plaintiff's Motion to Compel the Deposition of Dean Tagliaferro (Dkt. No. 45) is DENIED.

It is so ordered.

Dated:  November 10, 2022                                    /s/ Katherine A. Robertson
                                                                                 KATHERINE A. ROBERTSON
                                                                                 United States Magistrate Judge